**LEVI & KORSINKSY LLP**
ADAM C. MCCALL (State Bar No. 302130)
amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (866) 367-6510

**LEVI & KORSINKSY LLP**
Donald E. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com

*Counsel for Plaintiff Rebecca Graham*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| REBECCA GRAHAM, Individually and On Behalf of All Others Similarly Situated, | Case No. 16-cv-4367 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>CLASS ACTION</u> |
| TIVO, INC., PETER AQUINO, JEFFREY T. HINSON, DANIEL MOLONEY, THOMAS S. ROGERS, and WINIFRED MARKUS WEBB, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Rebecca Graham ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation

of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      This is a class action brought by Plaintiff on behalf of herself and the other public stockholders of TiVo Inc. ("TiVo" or the "Company"), other than Defendants (defined below) and their affiliates, against TiVo and the members of the board of TiVo (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between TiVo and Rovi Corporation ("Rovi").

2.      Under the terms of the Agreement and Plan of Merger (the "Merger Agreement"), through Defendant Rovi's wholly-owned subsidiary, Titan Technologies Corporation ("Parent"), and Parent's wholly-owned subsidiaries Nova Acquisition Sub, Inc. ("Rovi Merger Sub") and Titan Acquisition Sub, Inc. ("TiVo Merger Sub"), Rovi Merger Sub will be merged with and into Rovi, with Rovi surviving as the wholly-owned subsidiary of Parent.  Thereafter, TiVo Merger Sub will be merged with and into TiVo, with TiVo also surviving as the wholly-owned subsidiary of Parent.  Two directors of the Company's independent directors, William Cella ("Cella") and David Yoffie ("Yoffie") oppose the Proposed Transaction and did not recommend that stockholders adopt the Merger Agreement because it is not in the best interests of TiVo and its stockholders.

3.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading joint Proxy Statement pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Proxy") filed on Form S-4 with the SEC on June 6,

2

CLASS ACTION COMPLAINT

2016 and amended twice on July 8 and July 25, 2016. The Proxy recommends that TiVo stockholders vote in favor of approving a proposed transaction (the "Proposed Transaction") whereby Rovi will acquire TiVo for $10.70 per share in cash and stock. Specifically, the Proxy contains materially incomplete and misleading information by failing to disclose the unlevered, after-tax free cash flow projections for TiVo and Rovi as used in each of the discounted cash flow ("DCF") analyses performed by LionTree Advisors LLC ("LionTree"), the Company's financial advisor, and Evercore Group L.L.C. ("Evercore"), Rovi's financial advisor. Additionally, as it relates to LionTree and its affiliates and Evercore and its affiliates, the Proxy also fails to disclose the specific services rendered to Rovi by LionTree and Evercore during the preceding two years and the fees for such services rendered.

4. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting a shareholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to TiVo's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

6. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

3
CLASS ACTION COMPLAINT

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) TiVo maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

8. Plaintiff is, and has been at all relevant times, an owner of TiVo common shares and has held such shares since prior to the wrongs complained of herein.  Plaintiff is a citizen of the state of Ohio.

9. Defendant TiVo is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal corporate offices are located at 2160 Gold Street, San Jose, California 95002.  TiVo's software and cloud-based services provide an all-in-one approach for navigating 'content chaos' by seamlessly combining live, recorded, Video on Demand, and over-the-top (e.g. Netflix, Amazon, Hulu Plus, Vudu, and YouTube, among others) content into one intuitive user interface with simple universal search, discovery, viewing and recording, creating a unified viewing experience. TiVo common stock is listed on the NASDAQ Global Market under the ticker symbol "TIVO."  TiVo is named as a defendant herein solely for the purpose of providing full and complete relief.

10. Individual Defendant Peter Aquino ("Aquino") has served as a director of the Company since 2010.  Aquino is also a member of the Company's Audit Committee, Compensation Committee, and Nominating and Governance Committee.  Upon information and belief, Mr. Aquino is a citizen of the state of Virginia.

11.     Individual Defendant Jeffrey T. Hinson ("Hinson") has served as a director of the Company since 2007.  Hinson is also Chair of the Company's Audit Committee.  Upon information and belief, Mr. Hinson is a citizen of the state of Texas.

12.     Individual Defendant Daniel Moloney ("Moloney") has served as a director of the Company since 2013.  Moloney is the Lead Independent Director of the Board. Moloney also serves as a member of the Company's Compensation Committee and Nominating and Governance Committee.  Upon information and belief, Mr. Moloney is a citizen of the state of New York.

13.     Individual Defendant Thomas S. Rogers ("Rogers") has served as a director of the Company since 2003 and is currently Chairman of the Board.  Rogers served as President and Chief Executive Officer ("CEO") of the Company from July 2005 to January 2016, and as Vice Chairman of the Company from October 2004 to July 2005. Upon information and belief, Mr. Rogers is a citizen of the state of New York.

14.     Individual Defendant Winifred Markus Webb ("Webb") has served as a director of the Company since January 2016.  Webb is also a member of the Company's Audit Committee. Upon information and belief, Ms. Webb is a citizen of the state of California.

15.     The defendants identified in paragraphs 9-14 are collectively referred to as the "Defendants," the defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants."

## NON-DEFENDANT DIRECTORS

16.     Cella has served as a director of the Company since 2009.  Cella is also Chair of the Company's Compensation Committee.

17.     Yoffie has served as a director of the Company since 2011.  Yoffie is also Chair of the Company's Nominating and Governance Committee.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of TiVO common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

19. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. According to the Proxy, as of April 27, 2016, there were over 145 million shares of TiVo common stock issued and outstanding. The holders of these shares are believed to be geographically dispersed through the United States;

(b) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

    i. Whether Defendants violated Section 14(a) and Section 20(a) of the 1934 Act and SEC Rule 14a-9 by preparing, reviewing and disseminating a false and misleading Proxy; and

    ii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and its Poise for Growth

21.     As of January 31, 2016, TiVo had distribution relationships with television service providers representing 90 million global households as well as close to 1 million direct to consumer relationships.  The Company generates revenues primarily from four sources: (i) television service providers, (ii) consumer service, (iii) data analytics services, and (iv) licensing.

22.     On March 1, 2016, the Company announced its financial results for the fourth quarter and fiscal year 2016.  The Company reported that TiVo subscriptions neared 7 million for the fourth quarter 2016, a 24% increase over the prior year period.  For the fourth quarter 2016, service and software & technology revenue was $101.7 million, an increase of 11% over the prior year period.  Indeed, Naveen Chopra, TiVo's Interim CEO, commented on the results:

> We believe TiVo is a clear leader in next-generation video technology.  To convert on our commercial potential, however, we need to chart a new path.  We will focus on growth in our operator-related businesses; launch a new class of consumer products; and put in place organizational and operational changes that will drive revenues and better manage costs.  We expect this simplified, pragmatic focus will drive $25-$35 million in improved Adjusted EBITDA this year; and position us to capture profitable market share in a rapidly evolving video ecosystem.

23.     The press release announcing the financial results for the fourth quarter and fiscal year 2016 went on to provide that for fiscal year 2017, the Company expects service and software

& technology revenue to be in the range of $400 million to $420 million, as well a 107% net income improvement for fiscal year 2017.

24. On May 31, 2016, over a month after the announcement of the Proposed Transaction, the Company reported its first quarter 2017 financial results. The Company reported that TiVo subscriptions were over 7 million. During the first quarter 2017, TiVo continued to deliver significant growth on its service provider business, including first quarter service and software & technology revenue of $99.7 million, an 8% increase year-over-year.

**The Sale Process**

31. Dating all the way back to 2011 and 2012, TiVo and Rovi had discussions about a possible business combination of the two companies.

32. In November 2014, then-CEO and President of TiVo, Defendant Rogers, and Tom Carson ("Carson"), CEO of Rovi, began discussing a potential combination transaction. On December 30, 2014, the Strategy Committee of the Board, consisting of three directors, met to discuss a framework for a potential transaction with Rovi. The full board met in early January 2015 to discuss the advantages and disadvantages of a combination with Rovi. At the January 2, 2015 Board meeting, the Board approved TiVo management approaching Rovi to propose an all stock merger of equals transaction in which TiVo stockholders would receive a premium of 20%-25% to the then-current share price (which implied an exchange ratio of 0.616x to 0.641x), the board of the combined company would be made up of an equal number of members of directors from each of TiVo and Rovi, and the TiVo executive team would lead management. This framework was subsequently presented to Rovi.

33. In mid-January, Carson informed Defendant Rogers that the timing was not appropriate to enter into negotiations. However, the parties continued discussions regarding a potential transaction through February and March 2015. On March 20, 2015, Rovi and TiVo

executed a mutual confidentiality agreement and standstill agreement set to be in place for a period of 24 months. The standstill agreement also contained a "fall-away" provision, which provided that the agreement would terminate if any person or group proposed to acquire 50% or more of the voting securities of TiVo or Rovi or if either party solicited bids from third parties.

34. Discussions between the parties continued through March and April 2015. Then, on April 7, 2015, Rovi's financial advisor, Evercore, presented a framework for an all-stock transaction at an exchange ratio of 0.5000x, which approximated the average exchange ratio for the period following the receipt of TiVo's proposal on January 8, 2015, but represented a negative 17% premium to the then-current share price.

35. Through the remainder of April and May 2015, Rovi and TiVo continued discussions with each other and internally including, among other things, cost synergies, valuation, and strategy.

36. On June 2, 2015, the Board approved the engagement of LionTree as its financial advisor, which included payment to LionTree of $14.5 million for LionTree's services, contingent upon consummation of the transaction, and $2.0 million in connection with LionTree's delivering of a fairness opinion to be credited against the $14.5 million fee. The Company formally engaged LionTree on June 7, 2015.

37. At the June 3, 2015 Board meeting, the Board determined that a private equity buyer would be unable to match Rovi's price. The Board also reviewed a list of 12 other potential strategic acquirors and concluded that LionTree should not pursue discussions with any of these potential strategic acquirors for various reasons.

38. On June 19, 2015, Rovi submitted a revised merger of equals proposal to acquire TiVo at no premium and for 90% stock consideration. The revised proposal also called for

existing Rovi stockholders to receive one warrant per Rovi share with an exercise price of $22.50 and an expiration date of July 31, 2017 to address the valuation impact of certain customer licensing renewals. This would entirely exclude TiVo stockholders from participation in potential upside of a combined company.

39. On July 9, 2015, the Board yet again determined not to reach out to other potential bidders.

40. On July 16, 2015, Rovi's stock fell by more than 20% from $17.54 to $14.00, following a ruling in federal court in California finding certain Rovi patents in valid. From late July to December 2015, no direct discussions between TiVo and Rovi occurred, namely because there was no clear path to a transaction at that time.

41. On November 17, 2015, the Company announced that Defendant Rogers would step down as CEO, effective January 31, 2016, and would remain with the Company as Non-Executive Chairman. Subsequently, on January 12, 2016, the Company announced that Chopra was named Interim CEO.

42. From January 7, 2016 through March 23, 2016, members of TiVo's management, members of Rovi's management, and representatives of LionTree and Evercore, held various discussions regarding the two companies' respective businesses, relative valuation, and potential transaction structure. The parties also exchanged proposals regarding a potential transaction, all of which included a minimum cash component of $2.75 per share of TiVo common stock.

43. On March 14, 2016, the management of Rovi and TiVo tentatively reached an understanding, subject to approval of their respective boards, for Rovi to combine with TiVo in a stock and cash transaction with total consideration of $10.70 per share of TiVo common stock, including $7.95 of consideration in the form of shares of Rovi's common stock and $2.75 per

share in cash.  The exchange ratio for the stock portion would be determined at the time the Proposed Transaction is consummated.  If the Rovi closing stock price were between (or equal to) $16.00 and $25.00, the exchange ratio would be the quotient of $7.95 divided by the Rovi closing share price. If the Rovi share price were greater than $25.00, the exchange ratio would be 0.3180 shares of Rovi common stock per share of TiVo common stock, which would result in consideration greater than $10.70.  If the Rovi closing share price were less than $18.71 but greater than or equal to $16.00, Rovi would have the option to offer an exchange ratio of no less than 0.4250 shares of Rovi common stock per share of TiVo common stock, plus additional cash consideration, to maintain the total consideration of $10.70 per share. If the Rovi stock price were less than $16.00, the cash consideration and exchange ratio would be fixed at the values Rovi would have elected to offer (as described above) at a Rovi closing price of $16.00.

44.     On March 26, 2016, TiVo and Rovi executed a non-binding letter of intent on the terms described in the preceding paragraph.  Further, the parties agreed that Rovi would seek to retain the key members of TiVo's management and technical teams.  Additionally, the parties agreed that Rovi would finance the cash portion of the consideration with cash on hand.

45.     On April 1, 2016, Rovi's common stock tanked 15.2% from the prior day's close. The decrease in Rovi's stock price is attributable to: (i) Rovi filing suit against Comcast, Inc. for patent infringement; and (ii) Rovi entering into a standstill agreement with DISH Network and EchoStar Corporation, during which the parties agreed not to pursue litigation against each other in order to allow discussions to continue regarding an extension to their licensing agreement.

46.     On April 7, 2016, the Board met, along with LionTree and other Company advisors, and discussed an inquiry from a private equity fund seeking to determine whether the Company would be interested in engaging in discussions regarding a potential transaction.

11
CLASS ACTION COMPLAINT

Unsurprisingly, the Board determined not to engage with the private equity fund, without even seriously considering engaging at all with the private equity fund. Notably, the Company had not agreed to exclusivity with Rovi, nor was the Board prevented in any way from at least hearing potential proposal terms from the private equity fund.

47. On April 14, 2016, the Proxy states that at the conclusion of a Board meeting, the "consensus" of the Board was to continue negotiating with Rovi with Cella and Yoffie opposing.

48. On April 28, 2016, the Board, by majority vote, approved the Merger Agreement, reflecting essentially the same terms including in the term sheet executed between the parties on March 16, 2016 when Rovi's stock price was trading at $21.98 per share. On April 28, 2016, Rovi's stock price was trading at the decreased price of $17.35 per share, near bottom of the negotiated collar. Nonetheless, a majority of the Board determined that the terms of the Merger Agreement were fair to, and in the best interests of, TiVo and its stockholders. However, independent directors' Cella and Yoffie voted against approving he Merger Agreement, preferring the alternative of the Company remaining a stand-alone public company and hiring a new CEO to develop and pursue a new strategic growth and cost cutting plan. Cella and Yoffie also believed that the merger consideration to be paid to the Company's stockholders was too low. Despite Cella's and Yoffie's opposition, on April 29, 2016, TiVo and Rovi jointly announced the Proposed Transaction.

**The Materially Incomplete and Misleading Proxy**

49. Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

50. The Proxy discloses the following line items of the TiVo projections prepared by TiVo management for the fiscal years ending January 31, 2017 through 2021:

|  | Fiscal year ended January 31, | | | | |
|---|---|---|---|---|---|
|  | 2017E (1) | 2018E | 2019E | 2020E | 2021E |
| Total Revenue | $ 456.5 | $ 449.8 | $ 357.8 | $ 319.4 | $ 341.5 |
| Adj. Revenue (Excl. Non-Cash IP Licensing Revenue) (2) | 367.0 | 359.0 | 300.3 | 317.5 | 339.6 |
| Adj. EBITDA (3) | 152.0 | 185.7 | 105.6 | 61.5 | 84.6 |
| Adj. EBITDA (Excl. Non-Cash IP Licensing Revenue) (4) | 62.5 | 94.9 | 48.1 | 59.6 | 82.7 |
| Adj. Cash EBITDA (5) | 12.9 | 61.8 | 31.9 | 48.3 | 77.8 |
| Adj. Net Income (Excl. Non-Cash Licensing Income) (6) | 16.7 | 47.3 | 15.5 | 26.5 | 48.8 |

51. Similarly, the Proxy discloses the following line items of the Rovi projections prepared by Rovi management for calendar years ending 2016 through 2019. The Case 1 projections assume that Rovi does not enter into IP license renewal agreements with selected prior patent licensees during the period indicated, whereas the Case 2 projections assumes that Rovi enters into IP license renewal agreements with selected prior patent licensees during calendar year 2016. Such assumption is modeled using a license rate that is consistent with recent renewal license rates.

**Rovi Management Forecasts for Rovi (Stand-Alone, Pre-Merger Basis)(1)**
*(in millions, unaudited)*

| Case 1 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Product | $233 | $252 | $266 | $285 |
| Intellectual Property | $274 | $280 | $328 | $335 |
| Adjusted EBITDA(2) | $202 | $194 | $245 | $272 |
| **Case 2** | | | | |
| Product | $233 | $241 | $246 | $268 |
| Intellectual Property | $349 | $387 | $447 | $452 |
| Adjusted EBITDA(2) | $277 | $303 | $351 | $372 |

52. However, the Proxy fails to disclose the line item of unlevered, after-tax free cash flows that TiVo and Rovi were forecasted to generate through the fiscal year ending January 31, 2021 for TiVo and the calendar year ending December 31, 2019 for the Case 1 and Case 2 projections of Rovi. This is material because the Proxy specifically states that the unlevered free cash flows were utilized in both LionTree's and Evercore's discounted cash flow analyses.

53.     The Proxy also fails to disclose the specific services rendered by LionTree and its affiliates and the fees for such services rendered to Rovi, during the preceding two years. Similarly, the Proxy fails to disclose the specific services rendered by Evercore and its affiliates and the fees for such services rendered to Rovi, during the preceding two years. This information is important so that stockholders can understand the degree of LionTree's and/or Evercore's conflict of interest resulting from any prior or current work each has performed for Rovi.

54.     Without this material information, stockholders cannot make an informed decision whether or not to vote in favor of the Proposed Transaction or seek appraisal for their shares, and have been harmed thereby.

55.     Defendants failure to provide TiVo's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of TiVo's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

**Defendants Knew or Negligently Disregarded that the Proxy Omits Material Information**

56.     The Individual Defendants knew or negligently disregarded that the Proxy omits material information concerning the Proposed Transaction and/or contains the materially incomplete and misleading information discussed above.

57. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, the Individual Defendants knew or should have known that the Proxy contains misleading partial disclosures concerning the projections prepared for TiVo and Rovi and the potential conflicts of interest of LionTree and Evercore.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

60. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

61. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

62. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

63. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

64. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

65. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of TiVo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TiVo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

67. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

69. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

72. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D. To the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

F. Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 3, 2016                                     Respectfully submitted

**LEVI & KORSINSKY LLP**

By:    */s/ Adam C. McCall*
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290

Facsimile: (202) 333-2121
amccall@zlk.com

*Attorney for Plaintiff Rebecca Graham*

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Donald E. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT